**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 07 - 80291

| | |
|---|---|
| C. B. FLEET COMPANY,<br>INCORPORATED, | **CIV-RYSKAMP** |
| **Plaintiff** | MAGISTRATE JUDGE<br>VITUNAC |
| vs. | |
| UNICO HOLDINGS, INC., | |
| **Defendant.** | |

_____/

## MEMORANDUM IN SUPPORT OF PLAINTIFF C.B. FLEET COMPANY, INCORPORATED'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff C.B. Fleet Company, Incorporated ("**C.B. Fleet**") respectfully submits this memorandum of law in support of its motion pursuant to Rule 65 of the Federal Rules of Civil Procedure, for preliminary injunctive relief as set forth in C.B. Fleet's complaint against Unico Holdings, Inc. ("**Defendant**") for copyright infringement under 17 U.S.C. § 501 _et seq._

### I.     PRELIMINARY STATEMENT

C.B. Fleet is a well established, highly regarded manufacturer of pharmaceutical and personal care products. C.B. Fleet has manufactured and distributed laxatives and bowel cleansing products under its well known FLEET® and PHOSPHO-SODA® marks for over a century. Building on this success and the goodwill generated therein, C.B. Fleet released a bowel cleansing kit called "_FLEET® PHOSPHO-SODA® EZ-PREP™ Bowel Cleansing System_" (the "**Fleet Product**").[1] The Fleet Product was the first of its kind in the marketplace and, to date, has generated approximately $1.4 million in wholesale sales to retailers.

Defendant is a personal care manufacturer that has a history of infringing C.B. Fleet's marks, trade dress, and copyrighted works. Just as C.B. Fleet was on the verge of selling the Fleet Product to CVS® Pharmacy, one of C.B. Fleet's top retailers, Defendant approached CVS®

---

[1] _See_ DECLARATION OF MICHELE JOHNSON at ¶ 2, **EXHIBIT A,** which is an actual Fleet Product.

with a knock off kit called "*Easy to Use Preparation Cleansing Kit*" ("**Defendant's Product**").[2]
To gain an unfair competitive advantage over C.B. Fleet, Defendant intentionally copied the
Fleet Product's material and package design, stripped away C.B. Fleet's identifying information,
and is now passing off C.B. Fleet's works as its own, all while undercutting the retail price of
Defendant's Product by almost half of the retail price for the Fleet Product.  Defendant was so
intent on copying C.B. Fleet that its infringing materials misrepresent its own product.

      Defendant's infringement has resulted in incalculable damage to C.B. Fleet's copyrights,
goodwill and reputation.  C.B. Fleet respectfully seeks a preliminary injunction to prevent further
irreparable harm to C.B. Fleet, and to prevent Defendant from continuing to misrepresent the
origin, quality and characteristics of Defendant's Product to the public.

## II.    STATEMENT OF FACTS

### A.    C.B. Fleet And The Fleet Product

      C.B. Fleet is a well-respected, family owned pharmaceutical and personal care company
that has been in business for over 137 years.  DECLARATION OF STEVEN P. RUHF at ¶ 3.  C.B.
Fleet manufactures and distributes top quality pharmaceutical and personal care products,
including but not limited to, feminine care, skin care, oral rehydration, oral care, bowel cleansing
preparations, laxative and purgative products.  *Id.*  C.B. Fleet's reputation is enviable in the trade.
*Id.* at ¶ 4.  C.B. Fleet is well known to retailers, wholesalers, physicians, pharmacists, patients
and customers in the industry in the United States and elsewhere.  *Id.*  C.B. Fleet's products are
sold throughout the United States and in over 100 other countries.  *Id.* at ¶ 3.

      C.B. Fleet is particularly known for its high quality bowel cleansing and laxative
products.  *Id.* at ¶ 5.  FLEET® is one of the most recognizable names in bowel cleansing
products, commanding over 37% of the total sales of such products in the U.S.  *Id.*  C.B. Fleet
owns several U.S. trademark registrations for the marks FLEET® and PHOSPHO-SODA®[3] for
bowel cleansing, laxative and other products.  *Id.* at ¶ 6, **EXHIBITS A** and **B**.  Each mark has
been in continuous and extensive use since at least as early as 1893.  *Id.*  By virtue of its long-
standing years of continuous use and extensive sales, both marks have generated tremendous
goodwill and public recognition as names that consumers can trust.  *Id.*

---

[2] *See* JOHNSON DECL. at ¶ 3, **EXHIBIT C** which is an actual Defendant's Product.

[3] C.B. Fleet Investment Corporation, a company related to C.B. Fleet, is the owner of record for
the registered trademark PHOSPHO-SODA®.  RUHF DECL. at ¶ 6.

Building on the success and goodwill of these marks, C.B. Fleet identified a need in the marketplace for a complete "all in one" bowel cleansing kit that would be easy and convenient for consumers to use. RUHF DECL. at ¶ 7. After two years of extensive research and development, C.B. Fleet released the Fleet Product to the market. *Id.* at ¶ 8. The Fleet Product is designed as a convenient, user-friendly kit that contains: (i) two bottles of FLEET® PHOSPHO-SODA® unflavored oral saline laxative; (ii) two lemonade flavor packets; (iii) a mixing cup; (iv) a patient instruction sheet; and (v) a patient information sheet. *Id.* at ¶ 8, **EXHIBIT C**; DECLARATION OF MATTHEW W. CLANTON at ¶ 4, **EXHIBIT M**. To C.B. Fleet's knowledge, no other bowel cleansing kit had existed in the marketplace before the Fleet Product. *Id.* at ¶ 15.

C.B. Fleet spent substantial sums of money and resources, and employed its extensive years of know-how, to design the Fleet Product. *Id.* at ¶ 9. Each component of the kit is the result of in-depth patient/consumer testing. *Id.* Among these components are a "Patient Instruction Sheet" and a distinctive package design (collectively, the "**Fleet Copyrighted Works**"). *Id.* at ¶¶ 10, 13, **EXHIBITS D** and **E**. C.B. Fleet duly registered its copyrights in the Fleet Copyrighted Works with the U.S. Copyright Office on February 19, 2007. DECLARATION OF GARY BRUNETTI at ¶¶ 2-4. C.B. Fleet's copyright notice is clearly and conspicuously printed on the right panel side of the Fleet Product's box as "© C.B. Fleet Company, Inc., 2006." RUHF DECL. at ¶ 14; CLANTON DECL. at ¶ 4, **EXHIBIT F**.

### 1.    The Fleet Patient Instruction Sheet

A critical component of the Fleet Product is a patient instruction sheet entitled "*FLEET® PHOSPHO-SODA® EZ-PREP™ Bowel Preparation Instructions*" (the "**Fleet Patient Instruction Sheet**"). RUHF. DECL. at ¶ 10, **EXHIBIT D**; CLANTON DECL. at ¶ 2, **EXHIBIT A**. The Fleet Patient Instruction Sheet is the culmination of numerous market and patient studies. RUHF. DECL. at ¶ 12. The entire visual arrangement of the work and each of its components, including text, color, presentation, and graphics, were carefully developed and tested to ensure consumer comprehension. *Id.* C.B. Fleet spent more than $30,000 and countless hours in market testing to create the Fleet Patient Instruction Sheet. *Id.*

Certain points of the Fleet Patient Instruction Sheet are emphasized through deliberate use of background colors (light and dark green, white, orange, and red-orange) and font colors (dark green, white, and red), and through a deliberate choice of layout and format. *Id.* Distinctive, original features of the Fleet Patient Instruction Sheet include, without limitation:

a.    A two page format where: (i) the first page provides educational information on the bowel preparation process and (ii) a second page provides a timeline of events and steps for preparing and taking the Fleet Product, aided by images of the Fleet Product's contents;

b.    A first page broken up into four sections in alternating background colors, the second being dark green/orange and the fourth dark green. The second section is divided into two segments—a dark green background segment that runs more than half way across the page and an orange segment that runs the rest of the way across the page, with white font text throughout. The longer, dark green segment is entitled "THE IMPORTANCE OF DRINKING PLENTY OF **CLEAR LIQUIDS** DURING THE BOWEL PREPARATION PROCESS." The shorter, orange segment is entitled "Important Information." The third section displays green font text against a white background entitled "WHAT ARE 'CLEAR LIQUIDS'?" This section identifies several clear liquids including C.B. Fleet's HYDRALIFE™ oral rehydration powder product. The last two items on the list are distinguished from other items by red font and state "Do NOT drink or eat anything colored red or purple. Do NOT drink any alcoholic beverages.";

c.    The second page features an interactive "Bowel Preparation Timeline" in white font text (with red font indicating dosage events) against a dark green background. The timeline section includes a smaller section, with orange background, entitled "Important Information." Three successive sections then follow, all in green font against a white background, each entitled, respectively, "HOW TO MIX **DOSE 1**  Taken the evening before your bowel exam", "BETWEEN **DOSES**" and "HOW TO MIX **DOSE 2**.";

d.    In the "HOW TO MIX **DOSE 1**" section, certain text is displayed in red font as "important information." Two illustrations also appear: (i) a green-bordered box captioned "DOSE 1" that contains images of C.B. Fleet's flavor packet, blue "Dose 1" PHOSPHO-SODA® bottle, and mixing cup, with the flavor packet and bottle tilted diagonally as if being poured into the cup; and (ii) a green-bordered box captioned as "More Clear Liquids" that depicts a graphic image of a 12 fl. oz. cup. The flavor packet, saline bottle, and mixing cup are true graphic representations of the Fleet Product's contents;

e.    The section entitled "BETWEEN **DOSES**" contains a graphic image of two cups that are labeled "12 fl. oz" along with written text; and

f.    In the section entitled "HOW TO MIX **DOSE 2**", two illustrations appear at the far right hand side of the section: (i) a green-bordered box captioned "DOSE 2" that depicts

graphic images of the Fleet Product's flavor packet, a "Dose 2" PHOSPHO-SODA® bottle, and a mixing cup, with the flavor packet and bottle tilted diagonally as if being poured into the cup; and (ii) a green-bordered box captioned as "More Clear Liquids" that depicts a graphic image of a 12 fl. oz. cup. The flavor packet, saline bottle, and mixing cup are true graphic representations of the Fleet Product contents.

RUHF DECL. at ¶ 10, **EXHIBIT D**; CLANTON DECL. at ¶ 2, **EXHIBIT A** (emphasis in original).

The Fleet Patient Instruction Sheet is distributed as a component of the Fleet Product and is publicly available through C.B. Fleet's website at www.ez-prep.com. RUHF DECL. at ¶ 11.

### 2.    The Fleet Package Design

Another critical component of the Fleet Product is an original package design that conveys use, dosage, warnings, and other important information (the "**Fleet Package Design**"). *Id.* at ¶ 13, **EXHIBIT E**. The Fleet Package Design employs a light green, dark green, and white color display and features numerous distinctive components, including but not limited to:

a.    An original graphic representation of the contents of the FLEET® PHOSPHO-SODA® EZ-PREP™ kit on the lower right hand corner of the front panel of the box;

b.    A true to form graphic representation of C.B. Fleet's flavor packet as it appears and is distributed with the Fleet Product;

c.    Appearing below the "Phospho-soda® EZ-Prep™ mark in the middle of the front panel of the box are the words: "Bowel Cleansing System" and then, underneath, "For colonoscopies or other medical procedures";

d.    The contents of the box are listed on the front panel in a unique format of a number in bold green font followed by the item as follows: 2 Bottles of Fleet® Phospho-soda® Unflavored, 2 Lemonade Flavor Packets, 1 12 fl. oz. Mixing Cup, 1 Patient Instruction Sheet;

e.    On the front, top, and right side panels of the box, the Fleet® mark appears on the upper right hand corner against a curved green background. The Phospho-soda® EZ-Prep™ mark then appears in the middle of each panel, followed by the words "Bowel Cleansing System," followed by the words "For colonoscopies or other medical procedures.";

f.    A back side panel displaying, in distinctive font and in a bordered table, information about the Fleet Product in sections separated by bolded lines in the following order: "Drug Facts," "Active Ingredients," "Use," "Warnings," "Do not use," "Ask a doctor before use if you are…," "Ask a doctor or pharmacist before use if you are taking any other prescription or

non-prescription drugs," "Stop use and ask a doctor if you…," and "If pregnant or breast-feeding, ask a health professional before use" with elements within each section separated by bolded squares; and

g.      A left side panel displaying, in distinctive font and in a bordered table, sections separated by bolded lines in the following order: "Drug Facts (continued)," "Directions" (with bolded text providing an introduction followed by specific mixing and other instructions), "Other information," Inactive ingredients," and "Questions" which refers consumers to C.B. Fleet's website and toll free number.

*See* RUHF DECL. at ¶ 13, **EXHIBIT E**, CLANTON DECL. at ¶ 4, **EXHIBITS C** through **G**.

## B.    Fleet Product Sales, Marketing And Support

C.B. Fleet has engaged in extensive advertising and promotion of the Fleet Product. RUHF DECL. at ¶ 16. C.B. Fleet has spent approximately $1.8 million to date to develop, advertise and market the Fleet Product. *Id.* As a result, the Fleet Product has become widely recognized among retailers, wholesalers, physicians, pharmacists, patients and consumers. *Id.* C.B. Fleet sells the Fleet Product for resale to major pharmacies, grocers, and mega stores in this Judicial District and throughout the United States, such as Walgreens, Walmart, and Rite Aid. *Id.* at ¶ 17. The current retail price for the Fleet Product is $19.99. *Id.*

To date, the Fleet Product has generated approximately $1.5 million in wholesale sales to C.B. Fleet retailers, which is the equivalent of approximately $2 million in retail sales to consumers. *Id.* at ¶ 17. As part of its marketing efforts, C.B. Fleet has educated pharmacists and physicians about the Fleet Product through instruction materials, promotional flyers, and on-site presentations. *Id.* at ¶ 16. Moreover, C.B. Fleet maintains a toll-free consumer support line and website that are wholly dedicated to fielding inquiries about the Fleet Product. *Id.*

## C.    C.B. Fleet Promotional Efforts Involving CVS® Pharmacy

Shortly after the Fleet Product was released, C.B. Fleet met with CVS® Pharmacy, one of C.B. Fleet's top retailers to promote the Fleet Product. *Id.* at ¶ 18. CVS® Pharmacy sells numerous C.B. Fleet bowel cleansing and laxative products, including FLEET® PHOSPHO-SODA® oral laxative, one of C.B. Fleet's best selling products. *Id.* As a result of these meetings, CVS® Pharmacy asked C.B. Fleet to educate its pharmacists about the Fleet Product so that CVS® pharmacists could be prepared to field questions from purchasing consumers. RUHF DECL. at ¶ 19. C.B. Fleet participated in the CVS® Newscript Notice program which

provided each CVS® pharmacist with an informational sheet describing the PHOSPHO-SODA® EZ-PREP™ product, which was stored in the CVS® data library system for future use. RUHF DECL. at ¶ 19. Based on C.B. Fleet's experience, this kind of in-store education is a precursor by CVS® Pharmacy to offering new products in CVS® Pharmacy stores. *Id.*

However, in an unexpected and uncharacteristic turn of events, CVS® Pharmacy informed C.B. Fleet on January 22, 2007 that it would not be carrying the Fleet Product. *Id.* at ¶ 20. Shortly after that, on or about February 6, 2007, C.B. Fleet became aware that Defendant was manufacturing and distributing a virtually identical, lower priced bowel cleansing kit to CVS® Pharmacy called "*Easy-to-use Preparation Cleansing Kit*" under the "CVS® pharmacy" label ("**Defendant's Product**"). *Id.* at ¶ 21.

## D.    Defendant And Defendant's Product

Defendant is a personal care product manufacturer that has manufactured and sold numerous products that are virtually identical to, and marketed as substitutes for, C.B. Fleet products. *Id.* at ¶ 22. Defendant has sold such products by copying C.B. Fleet's well known marks, trade dress, package designs and copyrighted materials. *Id.* Defendant's products have included knock-offs of C.B. Fleet's PHOSPHO-SODA® laxatives and SUMMER'S EVE® disposable douches. *Id.* at ¶ ¶ 22, 23.

For instance, on or about July 24, 2006, Fleet became aware that Defendant was selling a line of disposable douche products called FRESH & PURE® douches. *Id.* at ¶ 23. The products were sold under various marks and substantially similar, if not identical, trade dress and packaging designs employed on C.B. Fleet's SUMMER'S EVE® line of disposable douches. *Id.* In addition, Defendant used a product design that was substantially similar, if not identical, to the product design owned and copyrighted by C.B. Fleet, with the same color used on the top and bottom of the package, substantially similar design, wording, and graphics. *Id.* Immediately after becoming aware of Defendant's infringing conduct, C.B. Fleet's legal counsel sent Defendant a cease and desist letter demanding that Defendant cease all infringing activity. *Id.* After long delays and put-offs, Defendant eventually complied with C.B. Fleet's demands and completely changed its marks, trade dress, and packaging. *Id.*

Consistent with its pattern of infringing on C.B. Fleet's intellectual property, Defendant recently launched a virtually identical version of the Fleet Product. RUHF DECL. at ¶ 21. As is the Fleet Product, Defendant's Product is marketed as a product designed to cleanse and prepare

the bowel prior to a medical examination or other procedure such as a colonoscopy. *Id.;* CLANTON DECL. at ¶ 4, **EXHIBIT H**. As does the Fleet Product, Defendant's Product contains: (i) two bottles of oral saline laxative; (ii) two lemonade flavor packets; (iii) mixing cup; and (iv) a patient instruction sheet (**"Defendant Patient Instruction Sheet"**). *Id.* Defendant's Product is sold at CVS® Pharmacy for a retail price of $11.99. DECLARATION OF HAROLD ETTINGER at ¶ 3.

**E.     Defendant's Patient Instruction Sheet And Package Design**

A simple comparison between the Defendant Patient Instruction Sheet and the Fleet Patient Instruction Sheet shows that the two sheets are virtually identical. *Compare* CLANTON DECL. at ¶ 2, **EXHIBIT A**, ¶ 3, **EXHIBIT B**, and ¶ 4, **EXHIBITS U** and **V**. As with the Fleet Patient Instruction Sheet, the Defendant Patient Instruction Sheet uses background colors (light and dark green, white, orange, and red-orange) and font colors (dark green, white, and red) in the same layout and format as the Fleet Patient Instruction Sheet. *Id.* The only noticeable differences are that C.B. Fleet's trademarks and identifying information are replaced by the words "Simple Procedure Bowel Cleaning Kit," "Cleansing Kit", and Defendant's own identifying information. *Id.* Defendant's version of the Fleet Patient Instruction Sheet even emphasizes the same text that C.B. Fleet emphasizes in the same style (bold and/or different colored font). *Id.*

In fact, it is difficult to ascertain which sheet is which. The Defendant Patient Instruction Sheet employs the same format, features, text (almost verbatim), layout, and color scheme as the Fleet Patient Instruction Sheet. Those similarities include, but are not limited to, the following:

a.     a two page format where (i) the first page provides educational information on the bowel preparation process and (ii) a second page that provides a timeline of events and steps for preparing and taking the Defendant Product, aided by purported images of the Defendant Product contents (including a Fleet flavor packet);

b.     a first page broken up into four sections in alternating background colors, the second being dark green/orange and the fourth dark green. The second section is divided into two segments—a dark green background segment that runs more than half way across the page and an orange segment that runs the rest of the way across the page, with white font text throughout. The longer, dark green  segment is entitled "THE IMPORTANCE OF DRINKING PLENTY OF **CLEAR LIQUIDS** DURING THE BOWEL PREPARATION PROCESS." The shorter, orange segment is entitled "Important Information." The third section displays green

-8-

font text against a white background entitled "WHAT ARE 'CLEAR LIQUIDS'?" This section identifies several clear liquids including C.B. Fleet's HYDRALIFE™ oral rehydration powder product. The last two items on the list are distinguished from other items by red font and state "Do NOT drink or eat anything colored red or purple. Do NOT drink any alcoholic beverages.";

       c.      a second page featuring an interactive timeline in white font text (with red font indicating dosage events) against a dark green background. The timeline section includes a smaller section, with orange background, entitled "Important Information." Three successive sections follow the timeline section, all in green font against a white background, each entitled, respectively, "HOW TO MIX **DOSE 1** Taken the evening before your bowel exam", "BETWEEN **DOSES**" and "HOW TO MIX DOSE 2";

       d.      in the "HOW TO MIX **DOSE 1**" section, the Defendant uses almost verbatim text as C.B. Fleet and, just like C.B. Fleet, displays "important" information in red font. Further, two illustrations also appear: (i) a green-bordered box captioned "DOSE 1" that contains an image of C.B. Fleet's flavor packet, a "Dose 1" bottle, and mixing cup, with the flavor packet and bottle tilted diagonally as if being poured into the cup; and (ii) a green-bordered box captioned as "More Clear Liquids" that depicts a graphic image of a 12 fl. oz. cup;

       e.      in the section entitled "BETWEEN **DOSES**", Defendant displays a graphic image of two cups that are labeled "12 fl. oz", along with written text identical to C.B. Fleet's; and

       f.      in the section entitled "HOW TO MIX DOSE 2", two illustrations appear at the far right hand side of the section: (i) a green-bordered box captioned "DOSE 2" displaying images of C.B. Fleet's flavor packet, a "Dose 2" bottle, and a mixing cup, with the flavor packet and bottle tilted diagonally as if being poured into the cup; and (ii) a green-bordered box captioned "More Clear Liquids" with a graphic image of a 12 fl. oz. cup. *See* CLANTON DECL. at ¶ 2, **EXHIBIT A**, ¶ 3, **EXHIBIT B**, and ¶ 4, **EXHIBITS U** and **V** (emphasis in original).

       In addition to distributing what is, in essence, the Fleet Patient Instruction Sheet, Defendant also markets and distributes the Defendant Product under a substantially similar package design (the "**Defendant Package Design**"). As with the Fleet Package Design, the Defendant Package Design contains a graphic representation of the contents of Defendant's Product on the lower right hand corner of the front panel of the box. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS C, H**, and **W**. As with the Fleet Package Design, the Defendant Package Design describes the product as a "Bowel Cleansing System" and then, underneath "For

colonoscopies or other medical procedures" in the same location on the front, right, and top panels of the box. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS C, F** and **G** with **EXHIBITS H, K** and **L**. As with the Fleet Package Design, the Defendant Package Design lists the contents of the box in the same unique format (bolded green-font number followed by the name of the item) in similar text (but-for replacing C.B. Fleet's trademarks with the CVS® Pharmacy mark) in the same order: "2 Bottles of CVS/pharmacy® Phosphate Unflavored; 2 Lemonade Flavor Packets, 1 12 fl. oz. Mixing Cup, 1 Patient Instruction Sheet." *Id.*, **EXHIBIT W**.

As with the Fleet Package Design, the Defendant Package Design places an identifying mark (the CVS® Pharmacy mark) on the front, top, and right side panels of the box against a curved green background. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS C, F** and **G** with **EXHIBITS H, K** and **L**. The Defendant Package Design employs a substantially similar color scheme in varying shades of dark to light green to white. *Id.*

Moreover, as with the Fleet Package Design, the "Drug Facts" of Defendant's Product are displayed on the back and left side panels of the Defendant Package Design, in substantially similar if not virtually identical font, bordered table, and order with only minor variation. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS D, E, I** and **J**. The back panel is separated by bolded lines in the following order: "Drug Facts," "Active Ingredients," "Uses," "Warning," "Do not use," "Ask a doctor before using this product if you are…," "Ask your doctor or pharmacist before use if you are taking any other prescription or non-prescription drugs," "Stop use and ask a doctor if you…," and "If pregnant or breast-feeding, ask a health professional before use." *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS D** and **I**.

The left side panel of the Defendant Package Design is also virtually identical to the left side panel of the Fleet Package Design, displaying, in distinctive font and in a bordered table, sections separated by bolded lines in the following order: "Drug Facts (continued)", "Other information", and "Inactive ingredients." *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS E** and **J**. The text within this panel and all other panels of the Package Design are, in large part, verbatim copies of the text in the Fleet Package Design. *Id.* In addition, elements within each section are separated by bolded squares just as they are in the Fleet Package Design. *Id.*

**F.    Defendant's Misrepresentations And Resulting Harm To C.B. Fleet**

The Defendant Patient Instruction Sheet and Package Design contain an image that closely resembles a Fleet Product flavor packet. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS**

**Q, R, S,** and **T.** These images do not remotely resemble the flavor packet that Defendant distributes with the Defendant Product. *Id.* Moreover, Defendant's Package Design states that Defendant's Product contains "2 Bottles of CVS/pharmacy® Phosphate **Unflavored**" (*emphasis added*). RUHF DECL. ¶ 24. This statement is false. C.B. Fleet has determined, through laboratory tests, that Defendant's Product contains "ginger-lemon" flavored phosphate. *Id.*

Finally, Defendant's bottles of phosphate laxative contain, in part, the following statement "FOR RELIEF OF OCCASIONAL CONSTIPATION AND BOWEL CLEANSING PRIOR TO MEDICAL PROCEDURE." *Id.* However, Defendant provides no dosage, usage, or any other information whatsoever on the Defendant Patient Instruction Sheet, or Defendant Package Design concerning the taking of any element of Defendant's Product for "relief of occasional constipation." *Id.*

Defendant's copying of the Fleet Copyrighted Works on a product that does not meet C.B. Fleet's quality control standards has resulted in immeasurable injury to C.B. Fleet's copyrights, goodwill, and reputation. RUHF DECL. at ¶ 26. Moreover, by inducing CVS® Pharmacy to forego the Fleet Product in favor of Defendant's infringing product, Defendant has caused C.B. Fleet to lose substantial market share. *Id.* Defendant's wrongful conduct has resulted in over a million dollars of lost wholesales of the Fleet Product. *Id.* at ¶ 27.

C.B. Fleet has informed the Federal Food and Drug Administration of Defendant's false and misleading branding of Defendant's Product. *Id.* at ¶ 25. Short of judicial intervention and alerting the FDA (which C.B. Fleet has already done), C.B. Fleet is powerless to prevent further harm to its reputation and goodwill and to prevent patient/consumer confusion resulting from Defendant's wrongful and infringing conduct. *Id.* at ¶ 28. Defendant is neither connected nor affiliated with C.B. Fleet and has no authority to copy or use the Fleet Copyrighted Works. *Id.* Further, C.B. Fleet has no method of controlling the quality or safety of Defendant's Product. *Id.*

## III.   ARGUMENT

### A.   C.B. Fleet Is Entitled To A Preliminary Injunction

The U.S. Copyright Act grants this Court the power to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In this Circuit, a plaintiff is entitled to preliminary injunctive relief if it shows: (1) a substantial likelihood of success on the merits of the plaintiff's case; (2) a substantial threat of irreparable injury to the plaintiff if the injunction is not granted; (3) that the

threatened injury to the plaintiff outweighs the harm that an injunction may cause the defendant; and (4) that granting the injunction would serve the public interest. *Suntrust Bank,* 268 F.3d at 1265; *Laboratorios Roldan C. Por A. v. Texas International, Inc.*, 902 F. Supp. 1555, 1565 (S.D. Fla. 1995). No particular quantum of proof is required to satisfy each of these four criteria. *Laboratorios Roldan*, 902 F. Supp. at 1565.

Once the plaintiff establishes a *prima facie* case of copyright infringement, the Court may presume likelihood of success on the merits and irreparable harm. *Touchston v. McDermott*, 234 F.3d 1133, 1159 fn. 4 (11th Cir. 2000) (*citing Richard Feiner & Co. v. Turner Entertainment Co.*, 98 F.3d 33, 34 (2d Cir. 1996)), *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1344-45 (S.D. Fla. 1998); *Mercedes J. Franklin & David Gantt v. Galleon Jewelers, Inc.*, 60 U.S.P.Q. 2d. 1595 (S.D. Fla 1999). This presumption is enhanced when the defendant is a direct competitor of the plaintiff. *Franklin*, 60 U.S.P.Q. 2d at 1595; *Developments, Inc. v. Galen Kilbum, Inc.*, 524 F. Supp. 710, 715 (N.D. Ga. 1981).

The presumption aside, injunctive relief is particularly appropriate in cases involving simple copying or piracy of copyrighted works. *SunTrust Bank v. Houghton Mifflin Company*, 268 F.3d at 1265. The instant proceeding is just such a case. Defendant, a direct competitor of C.B. Fleet, unlawfully copied and appropriated the Fleet Copyrighted Works, stripped away C.B. Fleet's identifying information, and is passing off the Fleet Copyrighted Works as its own on a product that direct competes with the Fleet Product. All of the requisite factors weigh heavily in favor of granting C.B. Fleet's request for preliminary injunction.

**B.** **C.B. Fleet Is Substantially Likely To Succeed On Proving Copyright Infringement**

C.B. Fleet meets the first requirement for preliminary injunction because it is substantially likely to succeed on the merits of its copyright infringement claim. To establish a *prima facie* case of copyright infringement, a plaintiff must show: (1) ownership of a valid and existing copyright and (2) that defendant copied the copyrighted material. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982). Both elements are present here.

**1.** **C.B. Fleet Owns Valid, Existing Copyrights In The Fleet Copyrighted Works**

There is no doubt that C.B. Fleet holds exclusive copyrights in the Fleet Copyrighted Works. A plaintiff is entitled to a strong statutory presumption of the validity and ownership of a copyright upon showing that the plaintiff obtained a copyright registration for the work within

-12-

five years after the work's date of first publication. 17 U.S.C. § 410(c) ("... the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *see Playboy Enterprises, Inc. v. Starware Pub. Corp.*, 900 F. Supp. 433, 436 (S.D. Fla. 1995); *Epic Metals Corporation v. Condec, Inc.*, 867 F. Supp. 1009, 1012-13 (M.D. Fla. 1994).

C.B. Fleet duly prepared and filed a copyright application on the Fleet Copyrighted Works with the United States Copyright Office identifying C.B. Fleet as the sole copyright owner. BRUNETTI DECL. at ¶ 2. The application covered both the Fleet Patient Instruction Sheet and the Fleet Package Design. *Id.*, **EXHIBIT A**. The resulting registration from the United States Copyright Office shows an issuance date of February 20, 2007. *Id.* at ¶ 4, **EXHIBIT B** (hereinafter the "Certificate of Registration"). The Copyrighted Works were first published on August 15, 2006. *Id.* Since the Certificate of Registration was made well within the requisite five year period after publication, C.B. Fleet is entitled to a strong statutory presumption that it owns valid, existing copyrights in the Fleet Copyrighted Works.

 **2.**  **Defendant Copied The Fleet Copyrighted Works**

To meet the second requirement for establishing copyright infringement, the plaintiff must show that the defendant copied original elements of the copyrighted work. *Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000). Because direct evidence of copying is rare, copying may be proven circumstantially by showing that the defendant had access to the copyrighted work and that the defendant's work and plaintiff's work are substantially similar. *Original Appalachian Artworks*, 684 F.2d at 829; *Cornerstone Home Builders, Inc. v. Hugh J. Mcallister*, 303 F. Supp. 2d 1317, 1320 (M.D. Fla. 2004). Moreover, in instances where an infringing work is "striking similar" to the copyrighted work, a plaintiff need not provide proof of access. *Playboy Enterprises*, 900 F. Supp. at 437; *Epic Metals,* 867 F. Supp. at 1012-13; *see also Baxter v. MCA, Inc.* 812 F.2d 421, 423-424 & n.2 (9th Cir.), *cert. denied*, 484 U.S. 954 (1987). In this case, proof that Defendant copied the Fleet Copyrighted Works can be shown under either a strikingly similar or substantially similar analysis.

 **a.**  **The Defendant Patient Instruction Sheet And Package Design Are Strikingly Similar To The Fleet Copyrighted Works**

A simple side by side comparison leaves no doubt that the Defendant Patient Instruction Sheet and Package Design are strikingly similar to, if not virtually exact copies of, the Fleet

Copyrighted Works. *Playboy Enterprises,* 900 F. Supp. at 437 (copying found based on defendant's images being "virtually exact copies"); *Epic Metals,* 867 F. Supp. at 1013 (copying found based on identical reproduction of portions of original work). Here, the striking and readily apparent similarities between the Fleet Copyrighted Works and the Defendant's Patient Instruction Sheet and Package Design exclude any possibility that the Defendant independently created the Defendant Patient Instruction Sheet or the Defendant Package Design.

The Defendant Patient Instruction Sheet and the Fleet Patient Instruction Sheet are virtually identical. *Compare* CLANTON DECL. at ¶ 2, **EXHIBIT A** with ¶ 3, **EXHIBIT B**; CLANTON DECL. at ¶ 4, **EXHIBITS T** and **U**. But-for Defendant replacing the C.B. Fleet name and trademarks with the generic names such as "Simple Procedure Bowel Cleaning Kit," and Defendant's own identifying information, one is hard pressed to tell the difference between the two works. Defendant's duplication is often "line by line," not only through the use of similar (if not verbatim) text, but also in the way the text is emphasized and displayed. *Id.* Moreover, prominent, original graphic illustrations and representations appearing in the Defendant Patient Instruction Sheet are strikingly similar to features in the Fleet Patient Instruction Sheet. *Id.* These include, without limitation, the bowel preparation "timeline" and graphic images of the flavor packet, saline laxative bottle, and mixing cup, and other images. *Id.* The Defendant Patient Instruction Sheet even contains the same promotional mention of C.B. Fleet's *Hydralife*™ Oral Rehydration Powder product. *Id.*

Similarly, the Defendant Package Design replicates nearly all of the Fleet Package Design. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS C** through **G** with **EXHIBITS H** through **L**; CLANTON DECL. ¶ 4, **EXHIBIT W**. Both package designs employ a light green, dark green, and white color display. *Id.* Both designs feature graphic representation of the contents of each product on the lower right hand corner of the front panel of the box. *Id.* Both package designs contain an image of a flavor packet that is strikingly similar to C.B. Fleet's flavor packet and that bears no relationship at all to the Defendant's flavor packet. *Compare* CLANTON DECL. at ¶ 4, **EXHIBITS Q, R** and **S**. Both designs display the words "For colonoscopies or other medical procedures" in the same location on the front, top, and right side panels of the box. *Id.*, **EXHIBITS F, G, H, K,** and **L**. Both designs feature a trademark (in C.B. Fleet's case, FLEET® and in Defendant's case, CVS® Pharmacy) against a curved green background on the upper right hand corner of the front, top, and right side panels of the box. *Id.* Both designs list the contents

of the product in the same format, font and style and in the following order: 2 bottles of laxative, 2 lemonade flavor packets, 1 mixing cup, and 1 patient instruction sheet, even though, in Defendant's case, its bottles of laxative are ginger-lemon flavored. CLANTON DECL. at ¶ 4, **EXHIBIT W**. And both designs display, in almost verbatim text and in the same font, order, and panel displays, information the product. *Id.*, **EXHIBITS D, E, I,** and **J**.

Even Defendant recognized that its outrageous acts of copying will cause confusion with the C.B. Fleet and the Fleet Product. Indeed, Defendant expressly warns consumers on the Defendant Patient Instruction Sheet to avoid confusion: "This product is not manufactured or distributed by C.B. Fleet Company Inc., owner of the registered trademark Fleet®. Phosphosoda® EZ-Prep™ is a registered trademark of C.B. Fleet Investment Corporation." CLANTON DECL. at ¶ 3, **EXHIBIT B**. Given Defendant's nearly exact replication of the Fleet Copyrighted Works, there can be no doubt that Defendant's infringed C.B. Fleet's copyrights.

     **b.**     **The Defendant Patient Instruction Sheet And Package Design Are Substantially Similar To The Fleet Copyrighted Works**

In the alternative, it is indisputable that Defendant had access to the Fleet Copyrighted Works and that Defendant's Instruction Sheet and Package Design are substantially similar. "Substantial similarity" exists where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. *Original Appalachian Artworks*, 684 F.2d at 829; *Southern Bell Tel. and Tel. Co. v. Associated Telephone Directory Publishers*, 756 F.2d 801, 810-11 (11th Cir. 1985). A plaintiff need not prove exact reproduction, only whether substantial similarities between the works exist. *Cornerstone Home Builders*, 303 F. Supp. 2d at 1320 (infringement where defendant's architectural design had same "look and feel" as plaintiff's design- defendant could not have achieved that "by happenstance"); *Epic Metals*, 867 F. Supp. at 1013 (infringement where defendant's brochure contained identical text, certain charts and tables- average audience would recognize the appropriation); *Franklin*, 60 U.S.P.Q. 2d at 1595 (infringement where defendant made inconsequential changes to plaintiff's designs).

Here, Defendant's Instruction Sheet and Package Design are substantially similar, if not virtually identical, to the Fleet Copyrighted Works. While Defendant may have made minor modifications necessary to market the product, such as removing C.B. Fleet's marks and information, these modifications are inconsequential. An average lay person, viewing the works side by side, would immediately recognize that Defendant copied the Fleet Copyrighted Works.

### c.      Defendant Had Access To The Fleet Copyrighted Works

Additionally, the Fleet Copyrighted Works were entirely accessible to Defendant.  The Fleet Product has been widely distributed and sold throughout the United States since September 2006.  RUHF DECL. at ¶ 15; *see Playboy Enterprises,* 900 F. Supp. at 437 (access to copyrighted images found based on plaintiff's publications being "widely distributed throughout the United States"); *Cornerstone Home Builders,* 303 F. Supp. 2d at 1320-21 (access shown by widespread use of building design in home construction).  Moreover, the Fleet Patient Instruction Sheet is publicly available through C.B. Fleet's website at www.ez-prep.com.  RUHF DECL. at ¶ 11.

Further evidence of access is the fact that Defendant specifically draws comparisons between Defendant's Product and the Fleet Product.  The front, right and top panels of Defendant's Package Design, invite consumers to "Compare to active ingredients of Fleet® Phosphate-soda®[sic] EZ-Prep™".  CLANTON DECL. at ¶ 4, **EXHIBITS H, K,** and **L.**  Further, Defendant refers to the Fleet Product on the second page of the Defendant Patient Instruction Sheet, stating that "This product is not manufactured or distributed by C.B. Fleet Company Inc., owner of the registered trademark Fleet®.  Phospho-soda® EZ-Prep™ is a registered trademark of C.B. Fleet Investment Corporation." *Id.* at ¶ 3, **EXHIBIT B.**  Finally, Defendant displays images that are strikingly similar to C.B. Fleet's flavor packet on the Defendant Package Design and Defendant Patient Instruction Sheet.  CLANTON DECL. at ¶ 4, **EXHIBITS S** and **T.**  These facts conclusively establish that Defendant had access to the Copyrighted Works.

### C.      Absent An Injunction, C.B. Fleet Will Suffer Irreparable Harm

As established above, C.B. Fleet is substantially likely to succeed on the merits of its copyright infringement claim and thus definitively meets the first element for preliminary injunctive relief.  Once a likelihood of success on the merits on a copyright infringement claim is demonstrated, irreparable harm is presumed.  *ABKO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 65 (2nd Cir. 1996); *CBS,* 9 F. Supp. 2d at 1344-45; *Franklin,* 60 U.S.P.Q. 2d at 1595.  Alternatively, irreparable harm may be proven by showing that the infringement has caused loss of market share, damage to the plaintiff's reputation and goodwill and/or loss of the ability to control the quality of its products.  *Id.*  Here, irreparable harm can be shown under either theory.

### 1.      C.B. Fleet Is Entitled To A Presumption of Irreparable Harm

By successfully proving a *prima facie* case of copyright infringement, irreparable harm to C.B. Fleet from Defendant's infringing conduct may be presumed.  *CBS,* 9 F. Supp. 2d at 1344-

45. This presumption is further enhanced because Defendant is a direct competitor of C.B. Fleet. *Franklin*, 60 U.S.P.Q. 2d at 1595; *Kevin Harrington Enterprises, Inc. v. Bear Wolf, Inc.*, No. 98-CV-1039, slip op. at 8, 1998 WL 35154990 (S.D. Fla. Oct. 8, 1998); *see McDonald's Corporation v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). Indeed, Defendant is selling the infringing Defendant's Product to one of C.B. Fleet's top retailers and, by passing off the Fleet Copyrighted Works as its own, is unfairly competing with C.B. Fleet.

## 2.     Defendant's Infringing Conduct Has Caused And Will Continue To Cause Irreparable Harm To C.B. Fleet's Goodwill And Reputation

Even if irreparable harm is not presumed, there is no doubt that C.B. Fleet has, in fact, incurred and will continue to incur, irreparable damage to its reputation and goodwill as a result of Defendant's infringing conduct. By passing off the Fleet Copyrighted Works as its own, Defendant is causing consumers to associate C.B. Fleet with Defendant and vice versa, thus leaving C.B. Fleet without any ability to control its own reputation, goodwill, and integrity of the Fleet Copyrighted Works. *See Laboratorios Roldan*, 902 F. Supp. at 1571; *Kevin Harrington*, 98-CV-1039, slip op. at 8 (finding that likelihood of irreparable harm increases when defendant's infringement leaves "plaintiff without the ability to control its own reputation"); *see also McDonald's Corp.*, 147 F.3d at 1310 (irreparable harm where plaintiff faced damage injury to reputation caused by defendant's distribution of an inferior and possibly dangerous product).

Defendant's Product falls far short of the strict quality control standards that C.B. Fleet maintains for the Fleet Product. *See* RUHF DECL. at ¶ 24. This is particularly apparent given Defendant's gross mislabeling and identification of various components of Defendant's Product. For instance, Defendant misbrands its phosphate laxative as "unflavored" when, in fact, it is flavored. *Id.* Further, Defendant's "Dose 1" phosphate bottle confusingly states that the product is used for "RELIEF OF OCCASIONAL CONSTIPATION" and that consumers should "SEE CARTON FOR DIRECTIONS AND WARNINGS" and read them carefully before use. RUHF DECL. at ¶ 24. Inexplicably, Defendant's Package Design and Patient Instruction Sheet contain no directions or warnings as to how to use product to relieve occasional constipation. *Id.*

These misleading statements, coupled with confusing variances in expiration dates on Defendant's phosphate laxative bottles, make it evident that Defendant, in its rush to unfairly compete for the business of CVS® Pharmacy, has haphazardly assembled improperly labeled, pre-existing supplies that do not necessarily conform to the unique nature of a bowel cleansing,

-17-

pre-medical procedure preparation kit. In doing so, Defendant not only offers a product that is far below C.B. Fleet's quality control standards and, thus, of lesser quality, but one that is potentially dangerous. C.B. Fleet faces irreparable damage to its reputation and goodwill as a result of these glaring deficiencies. RUHF DECL. at ¶ 26; see *Franklin*, 60 U.S.P.Q. 2d at 1595 (sale of infringing, poor quality products at lower cost constituted irreparable injury).

### 3. Defendant's Wrongful Conduct Has Caused C.B. Fleet to Lose Market Share

Courts have held that the destruction of profit margins and taking of market share by an infringer wreaks irreparable harm on a copyright holder. *See, e.g., Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,* 312 F.3d 94, 96-97 (2d Cir. 2002) (irreparable harm found where defendant sold same product as plaintiff in same market); *CBS*, 9 F. Supp. 2d at 1344-45 (irreparable harm found where defendant's infringing conduct resulted in lost network and station revenue); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1315 (S.D.N.Y. 1995) (irreparable harm found where defendant's sale of infringing product at a discount rate would make plaintiff's ability to sell its own product at a higher price more difficult).

Here, Defendant's outrageous infringement has enabled Defendant to produce Defendant's Product at far less cost than C.B. Fleet for the Fleet Product. Defendant has passed that savings on to CVS[®] Pharmacy resulting in a retail price for Defendant's Product that is almost half that of the authentic Fleet Product. ETTINGER DECL. at ¶ 3 ($11.99 for Defendant's Product); RUHF DECL. at ¶ 17 ($19.99 for the Fleet Product). This has resulted in substantial and incalculable damages to C.B. Fleet in at least two ways. First, it has made and continues to make it more difficult for C.B. Fleet and its retailers to sell the Fleet Product at its established price. Second, it has enabled Defendant to entice CVS[®] Pharmacy, one of C.B. Fleet's top retailers, to choose Defendant's Product over the Fleet Product. *See* RUHF DECL. at ¶ 20. CVS[®] Pharmacy's choice to sell Defendant's infringing product and not the Fleet Product has resulted in C.B. Fleet losing over $1 million in direct sales to CVS[®] Pharmacy, equating to more than $1.4 million in retail sales to consumers. *Id.* at ¶ 27.

### D. An Injunction Will Not Impose Any Significant Cognizable Harm On Defendant

An injunction would not stop Defendant from competing *fairly* in the marketplace, nor would it shut down Defendant's manufacturing facility. Defendant would simply be required to carry on its business without infringing the Fleet Copyrighted Works.

Furthermore, an injunction would not affect *any* of Defendant's legitimate rights. Defendant's only potential damages are loss of profits from sales it would have made off of infringing goods prior to trial. An injunction requiring a defendant to forego profits from infringing conduct is not and cannot be more burdensome on a defendant when weighed against the harm a plaintiff would suffer if injunctive relief were to be denied. *CBS*, 9 F. Supp. 2d at 1345 ("a company cannot build a business on infringements and then argue that enforcing the law will cripple that business"); *Adobe Sys., Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996) (balance of harm favored injunction where only hardship defendant would suffer was court-ordered compliance with copyright laws).

Finally, a preliminary injunction would be relatively easy for the Court to enforce and for Defendant to promptly effectuate. Since Defendant's Products appear to be limited to distribution through CVS® Pharmacy stores, the number of affected third parties would be limited. Moreover, Defendant's Product has, to the best of C.B. Fleet's knowledge, only been on the market since February of 2007. RUHF DECL. at ¶ 21. In light of the foregoing, the balance of the harms weighs heavily in favor of granting C.B. Fleet's request for preliminary injunction.

**E.      Public Interest Favors A Preliminary Injunction**

Finally, granting C.B. Fleet a preliminary injunction would serve the public interest. In copyright cases, "it is virtually axiomatic that public interest can only be served by upholding copyright protections and, correspondingly, preventing misappropriations of the skills, creative energies, and resources which are invested in the protected work." *See Kevin Harrington*, 98-CV-1039, slip op. at 8, *citing* 4 Nimmer, §14.06[A]. Further, it is in the public interest to immediately stop any deception resulting from infringement. *Laboratorios Roldan*, 902 F. Supp. at 1571 ("the public is entitled to be free from deception and confusion"); *Stoneworks Inc. v. Empire Marble and Granite Inc.*, 49 U.S.P.Q. 2d 1760, 1765-66 (S.D. Fla. 1998) (*citing Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2nd Cir. 1976)("The interests of the public in not being victimized and misled are important considerations.").

In this case, all of these interests would best be served by granting C.B. Fleet's motion for preliminary injunction. Indeed, requiring Defendant to stop the sale of its infringing and misbranded products would not only promote the public interest in preventing intellectual property misappropriation, but will also lay the foundation for taking a deficient, mislabeled and potentially dangerous product off the market.

Having shown a likely and probable success on the merits of its copyright infringement claim, as well as the irreparable harm, a balance of hardships, and public interest that favor injunctive relief, a preliminary injunction is warranted.

## IV.    CONCLUSION

For all of the foregoing reasons, C.B. Fleet respectfully requests that this Court grant this motion for preliminary injunction.

Respectfully submitted,

C.B. FLEET COMPANY, INCORPORATED

*OF COUNSEL*

By: _____
Janet T. Munn, Esq.
FBN: 501281
jmunn@ebglaw.com
EPSTEIN BECKER & GREEN. P.C.
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 2100
Miami, FL 33131
Tel: (305) 375-7592
Fax: (305) 982-1521

Donald J. Pelto, Esq.
dpelto@sheppardmullin.com
David F. Geneson
FBN: 173525
dgeneson@sheppardmullin.com
Matthew W. Clanton
mclanton@sheppardmullin.com
Sheppard, Mullin, Richter &
Hampton LLP
1300 I Street, NW
Eleventh Floor East
Washington, DC 20006
Tel: (202) 218-0000
Fax: (202) 218-0020

*Counsel for Plaintiff C.B. Fleet Company,
Incorporated.*

Date: March 30, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via

Process Server upon:

Christopher A. Bohlman
1830 2nd Avenue North
Bay # 1
Lake Worth, Florida 33461
(Unico Holdings, Inc. Registered Agent)

Janet J. Munn

Janet T. Munn

MI: 99836

-21-